IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00334-RBJ-MJW

BRIAN HICKS,

    Plaintiff,

v.

STEPHANIE PODOLAK,
RENE GARCIA,
SHAWN KUTA,
SHIKAH DOSANJ,
STEVE BROWN,
SEAN SNIDER, and
JOHNNY CHAVEZ,

    Defendants.

# ORDER

    Plaintiff Brian Hicks, an inmate at the Federal Detention Center in Englewood, Colorado ("FDC-ENG"), filed this *Bivens* and § 1983 action against an assistant U.S. Attorney in the District of Colorado (Stephanie Podolak) and several Bureau of Prisons ("BOP") officials claiming these defendants engaged in a conspiracy to deprive him of procedural and substantive due process rights as well as his right to access the courts under the First Amendment. This matter is before the Court on the August 16, 2013 Recommendation by Magistrate Judge Michael J. Watanabe that defendants' motions to dismiss [#98 and #99] be GRANTED. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b).

    Mr. Hicks filed an initial complaint dated February 6, 2012. The Court directed Mr. Hicks to resubmit his complaint using the Court's current form, and Mr. Hicks complied by

1

filing a First Amended Complaint on March 2, 2012. Judge Babcock dismissed Mr. Hicks's claims against two of the defendants as legally frivolous. The remaining defendants filed motions to dismiss at which time the Court granted leave to Mr. Hicks to file a Second Amended Complaint. Mr. Hicks filed his second complaint on October 31, 2012. At that point, this Court dismissed the claims against one of the named defendants, Blake Davis, based on Mr. Hicks's inability to serve Mr. Davis with process. Subsequently, Mr. Hicks voluntarily withdrew his claims against the United States, voiding his fifth claim for relief. Therefore Mr. Hicks's complaint still contains four active claims. A quick description of the facts underlying Mr. Hicks's case will be helpful here.

In January of 2007, Darrent Williams, a former Denver Bronco, was killed in a drive-by shooting. The vehicle involved in the shooting belonged to Mr. Hicks who was incarcerated in the Denver County Jail at the time of the killing. Notwithstanding the fact that he was in custody, Denver homicide detectives believed that Mr. Hicks might have been involved in the crime or might have possessed information relevant to the investigation. These detectives questioned Mr. Hicks about the crime, but Mr. Hicks refused to discuss the incident with police and exercised his right to remain silent. Around the same time, Mr. Hicks was transferred out of the general population at the jail and into solitary confinement.

On May 8, 2007 while still incarcerated, Mr. Hicks was indicted for violating federal drug laws. Following his arraignment on these charges, Mr. Hicks was transferred to FDC-ENG where he was placed in the general prison population. All the while, police continued investigating the Darrent Williams murder. Mr. Hicks was never a suspect in the shooting, but local news identified him as the owner of the automobile used in the crime. Prison officials at FDC-ENG were aware of this media coverage. The events that follow give rise to Mr. Hicks's

2

legal claims against Ms. Podolak and the BOP officials.

While awaiting his federal trial at FDC-ENG, Mr. Hicks's attorney informed him that federal prosecutors were willing to offer Mr. Hicks a plea agreement in exchange for his cooperation in the Darrent Williams case. His attorney also explained that prosecutors would "come down hard on him" if he did not take the deal. Mr. Hicks refused to cooperate. As promised, the government filed a superseding indictment that contained additional drug charges against Mr. Hicks. After the indictment was returned, prison officials moved Mr. Hicks into the Special Housing Unit ("SHU") at FDC-ENG. Mr. Hicks asked officials why he was assigned to the SHU and received conflicting answers. Some prison officials justified the move as necessary to maintain institutional security in light of the media attention on Mr. Hicks. In contrast, Warden Blake Davis told Mr. Hicks that the AUSA assigned to Mr. Hicks's drug prosecution, Ms. Podolak, ordered the transfer.

Mr. Hicks spent three blocks of time in the SHU: (1) approximately nine months between July 27, 2008 and May 13, 2009; (2) approximately two months between July 1, 2009 and September 13, 2009; and approximately three years between October 2, 2009 and November 20, 2012. Mr. Hicks did not cause any disturbances within the general prison population during those times that he resided in the general prison population.

Mr. Hicks alleges that during his time in the SHU, defendants Sean Snider and Steve Brown used deceit and coercion to try to force Mr. Hicks to leave his cell and discuss the Williams murder with detectives. Mr. Hicks further alleges that his administrative complaints went unanswered by defendant Shawn Kuta, Unit Manager at FDC-ENG.

On July 13, 2010, Mr. Hicks's appointed counsel petitioned for a court order allowing her to visit him in the SHU or, alternatively, moving Mr. Hicks back into the general prison

population. Mr. Hicks claimed that continued placement in the SHU interfered with his right to counsel and violated his due process rights because the placement was not done for a penological purpose. The government disputed these claims and offered an affidavit from FDC-ENG Captain Johnny Chavez in support of its argument that Mr. Hicks's continued confinement was based on legitimate penological security concerns. Mr. Hicks now argues that this affidavit was false and mere pretext designed to cover up the truth that law defendants placed him in the SHU to punish him for refusing to cooperate in the Williams investigation.

The remaining claims in Mr. Hicks's complaint are these: (1) that the defendants, in violation of 42 U.S.C. § 1983, engaged in a conspiracy to deprive him of his rights to be free from cruel and unusual punishment and to receive due process and equal protection under the law (2) that his detention in the SHU violates the Eighth Amendment and his procedural and substantive due process rights under the Fifth Amendment; (3) that his detention in the SHU deprived him of access to the courts in violation of the First Amendment and his procedural and substantive due process rights under the Fifth Amendment; (4) and that his detention in the SHU violated his equal protection rights under the Fifth Amendment because similarly situated prisoners were not subject to the same treatment. Mr. Hicks initially brought a fifth claim of intentional infliction of emotional distress against the United States, but Mr. Hicks later voluntarily dropped that claim.

Defendants moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [# 98 and 99]. Ms. Podolak makes the following arguments: (1) Mr. Hicks's demand for money damages is barred by the statute of limitations; (2) Mr. Hicks fails to state a claim against Ms. Podolak; (3) Ms. Podolak is entitled to qualified immunity on all claims; and (4) any claims against Ms. Podolak in her official capacity should be dismissed for lack of jurisdiction. The

remaining BOP defendants—Garcia, Kuta, Dosanj, Brown, Snider, and Chavez—make the similar arguments in favor of dismissal: (1) the statute of limitations bars Mr. Hicks from recovering money damages related to his placement in the SHU; (2) Mr. Hicks fails to state a claim against defendants; (3) defendants are entitled to qualified immunity on all claims; and (4) to the extent that Mr. Hicks brings official capacity claims for damages or official capacity claims against defendants who are no longer employed by FDC-ENG, those claims should be dismissed for lack of jurisdiction. Mr. Hicks opposes both motions to dismiss.

The Court referred the motions to a magistrate judge. On August 16, 2013 Magistrate Judge Watanabe issued a Recommendation concluding that both motions to dismiss ought to be granted. Judge Watanabe reasoned that the statute of limitations barred claims one and four, claim three was moot due to the dismissal of defendant Davis, and the fact that Mr. Hicks is no longer confined in the SHU mooted any remaining claims for injunctive or declaratory relief. Regarding the remaining procedural and substantive due process claims in Claim Two, Judge Watanabe concluded that they failed to rise to the level of a constitutional violation and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Both parties objected to Magistrate Judge Watanabe's Recommendation. Defendants agreed with Judge Watanabe's Recommendation but objected nonetheless "out of an abundance of caution and in light of the Tenth Circuit's 'firm waiver' rule." [#124 at 2.] Specifically, they believe that their arguments regarding qualified immunity, absolute immunity, lack of personal participation, failure to state a claim, and the absence of a *Bivens* remedy for First Amendment violations provided alternative grounds that Judge Watanabe could have relied upon to grant the motions to dismiss. Mr. Hicks objected that he was entitled to equitable tolling of the statute of limitations, that his claims were based on a theory of continuing violations and therefore were

not time barred, that he was still entitled to injunctive and declaratory relief due to the possibility that he might be returned to the SHU, and that he pled sufficient facts to state a claim against defendants for violation of his procedural and substantive due process rights.

## STANDARD OF REVIEW

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* When a magistrate judge issues an order on a non-dispositive pretrial matter, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Because the parties objected to Judge Watanabe's Report and Recommendation, the Court therefore reviews the recommended disposition de novo.

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 1951.

Because Mr. Hicks represents himself *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

## CONCLUSIONS

<u>Statute of Limitations</u>

A *Bivens* action such as the one brought by Mr. Hicks is subject to the statute of limitations for personal injury actions "in the state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir 2007). In Colorado, there is a two-year statute of limitations for personal injury actions. *See* C.R.S. § 13-80-102. Federal law, however, governs the issue of when a cause of action accrues. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (internal quotation marks omitted).

Mr. Hicks dated his original complaint on February 6, 2012. Therefore any claims he brings regarding injuries that occurred more than two years before that date are barred. At first glance, it appears that Mr. Hicks's claims are based on his placement in the SHU on July 27, 2008, July 1, 2009, and October 2, 2009. Because these dates are more than two years prior to the date when Mr. Hicks filed his complaint, they are presumptively barred. Mr. Hicks does not dispute that there is a two year statute of limitations. [#115 at 6.] Instead, he argues that his

claims are not time-barred because he is entitled to equitable tolling or, alternatively, the continuing violation doctrine ought to apply to his confinement in the SHU.[1]

### Equitable Tolling

Equitable tolling is governed by state law. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). Under Colorado law, once the statute of limitations is raised as an affirmative defense, the plaintiff bears the burden of showing that the statute has been tolled. *Garrett v. Arrowhead Imp. Ass'n*, 826 P.2d 850, 855 (Colo. 1992). Moreover, "an equitable tolling of a statute of limitations is limited to situations in which either [1] the defendant has wrongfully impeded the plaintiff's ability to bring the claim or [2] truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996). As far as the second prong is concerned, "[t]he Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010).

As Mr. Hicks points out, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), he is required to exhaust all administrative appeals before filing suit in federal court. If he fails to do so, his suit may be dismissed. *See, e.g.*, *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002). Theoretically then, "the PLRA's exhaustion requirement could constitute a circumstance 'mak[ing] it impossible for [a] plaintiff to file his or her claims within the statutory period,' thus entitling a plaintiff to equitable tolling, so long as [he or she] makes good faith efforts to pursue the claims when possible.'" *Braxton*, 614 F.3d at 1161 (citation omitted).

I agree with Judge Watanabe that Mr. Hicks has failed to plead sufficient facts suggesting a plausible claim that prison officials interfered with his efforts to exhaust administrative

---

[1] Mr. Hicks raises this "continuing violation theory" argument for the first time in his objection to Judge Watanabe's Report and Recommendation. Because it reviews the Recommendation de novo, this Court will consider Mr. Hicks's argument.

remedies. In his response, he makes a general allegation that defendants wrongfully denied him access to legal materials. [#115 at 11]. This allegation, however, is not supported by any facts in the complaint. Moreover, Mr. Hicks failed to allege any other facts suggesting an unlawful or wrongful motive behind delays in the processing or delivery of correspondence relating to his appeal.

Mr. Hicks's stronger argument is in the extraordinary circumstances prong: that the impossibility of filing his present suit within the time permitted by the statute of limitations coupled with his efforts to pursue his appeals entitles him to equitable tolling. The Tenth Circuit allows equitable tolling under extraordinary circumstances when "exhaustion is a necessary condition precedent to filing suit, *and* a plaintiff has been diligent in pursuing the claim following exhaustion." *Braxton*, 614 F.3d at 1162.

Nonetheless, I agree with Judge Watanabe and am not convinced that Mr. Hicks's situation rises to the extraordinary circumstances required by law. Mr. Hicks had access to various legal materials that explained the administrative process. [#1 at 51-52.] With this information, Mr. Hicks had the ability to organize his legal efforts and to be aware of key dates. In any event, he waited five months to file his suit after exhausting his appeal of his June 2008 placement, and he waited seventeen months to file his suit after exhausting his appeal of his October 2009 placement. [#123 at 21.] These delays are similar in length to those in other cases where the Tenth Circuit has declined to apply equitable tolling. *See, e.g.*, *Braxton*, 614 F.3d (waiting two years after exhaustion to file); *Rosales v. Ortiz*, 325 F. App'x 695 (10th Cir. 2009) (waiting ten months after exhaustion to file).

Mr. Hicks counters that in *Braxton*, the plaintiffs did not "offer[] an explanation for why they did not file this action [within the limitations period], let alone why they waited almost two

9

years to file suit after receiving the final response from the grievance process." *Braxton*, 614 F.3d at 1162. In contrast, Mr. Hicks explains that the delay in his case is due to the long hours he spent in the law library grappling with the complexity of his case. [#127 at 12-14.] While the Court does not doubt that Mr. Hicks spent enormous amounts of time and energy on his case, this explanation does not rise to the level of an extraordinary circumstance warranting equitable tolling. These cases are always difficult and complex, particularly for *pro se* litigants. Nonetheless, it would defeat the purpose of the statute of limitations if complexity and difficulty were sufficient excuses for waiting months after the expiration of the statute to file a complaint. Indeed, it is hard to imagine a situation where a plaintiff would not be entitled to equitable tolling on those grounds. This Court recognizes that the PLRA and the appeals process make it difficult for prisoners to file claims in a timely manner. However, the law in this circuit requires circumstances more extraordinary than Mr. Hicks's to apply equitable tolling.

### Continuing Violation Doctrine

In his objection to Judge Watanabe's Report and Recommendation, Mr. Hicks argues that his claims should not be considered time-barred under the continuing violation doctrine. [#127 at 14-15.] However, prior cases in the Tenth Circuit offer persuasive evidence that such a theory does not apply to *Bivens* actions. In a § 1983 case[2] involving similar facts, the Tenth Circuit declined to apply the continuing violations theory. *Romero v. Lander*, 461 F. App'x 661, 667 (10th Cir. 2012) *cert. denied*, 133 S. Ct. 212 (2012). In that case the plaintiff, Mr. Romero, brought constitutional challenges against his classification as a sex offender. In an attempt to overcome the statute of limitations, Mr. Romero argued that the continuing violation theory

---

[2] Claims based on *Bivens* and § 1983 are both subject to the same statute of limitations and accrual analysis. *Roberts*, 484 F.3d at 1238.

meant that his cause of action did not accrue until he knew the "nature and extent of his injury."

*Romero*, 461 F. App'x at 669. The Tenth Circuit disagreed:

> As explained above, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander*, 382 F.3d at 1215 (quotations omitted). The injury that is the "basis of action" in a § 1983 claim is the violation of a constitutional right. *See Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir.1998) ("Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." (quotations and citations omitted)).

*Romero*, 461 F. App'x at 667. Similarly, "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir.1994).

Mr. Hicks knew of his constitutional injury, not when he was finally removed from the SHU, but when he first learned of his allegedly unlawful placement there. Therefore, this Court declines to apply the continuing violations doctrine to this case. The following claims are time-barred by the statute of limitations: (1) claims related to Mr. Hicks's initial placement in the SHU on July 27, 2008; (2) claims related to his subsequent placement in the SHU on October 2, 2009; and (3) Mr. Hicks's claims against defendant Kuta concerning Kuta's alleged refusal to respond to Mr. Hicks's administrative appeals regarding threats made against him in 2008.

<u>Access to the Court</u>

Judge Watanabe recommends dismissal of the remaining claims under Claim Three because they concern only the dismissed defendant Blake Davis. It should be noted, however, that the complaint alleges that Ms. Podolak is also liable for this violation of Mr. Hicks's right of access to the courts because she, according to Mr. Hicks, is the reason he was placed in the SHU. [#85 at 23.] Nonetheless, I agree with the recommendation for dismissal of this claim because

the complaint does not allege any facts in support of Ms. Podolak's liability beyond the conclusory statement that she put him in the SHU in the first place.[3]

### Injunctive and Declaratory Relief

In light of Mr. Hicks's release from the SHU, I agree with Judge Watanabe that the remaining claims for injunctive and declaratory relief are moot. Mr. Hicks objects, arguing that injunctive and declaratory relief are still necessary in order to ensure he is not returned to the SHU. [#127 at 14-18.] I am unconvinced. According to the Tenth Circuit,

> [w]hen prospective equitable relief is requested, the requesting party must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. . . . Similarly in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant.

*Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (citations omitted). Because Mr. Hicks is no longer in the SHU and because he has not alleged facts that if proven would suggest he is likely to be returned to the SHU, his equitable claims are moot. *See, e.g.*, *Jordan v. Sosa*, 654 F.3d 1012, 1032 (refusing to enjoin prison officials from placing plaintiff in special housing "based upon the speculative suggestion that a plaintiff *might* be returned to a setting where he would be subject to allegedly unconstitutional practices"); *McAlpine v. Thompson*, 187 F.3d 1213, 1217 n.5 (10th Cir. 1999) (refusing to enjoin prison officials to provide a prisoner with ceremonial items when that prisoner was no longer in the custody of those officials).

### Failure to State a Claim

At this point in my analysis, I arrive at the same conclusions as Judge Watanabe. There are two claims remaining after winnowing out those that are time-barred or moot: (1) substantive due process violations associated with Mr. Hicks's placement in the SHU after February 6, 2010,

---
[3] I also note that Mr. Hicks does not appear to object to this portion of the Magistrate Judge's Recommendation in his written objections.

and (2) procedural due process violations associated with the lack of administrative review of his placement in the SHU after February 6, 2010.  I am unable, however, to accept the recommendation that these claims ought to be dismissed under Fed. R. Civ. P. 12(b)(6).

As explained above, on a motion to dismiss the Court assumes the truth of the facts alleged by the plaintiff.  Therefore if the facts alleged by Mr. Hicks present a plausible claim upon which relief could be granted, defendants' motions to dismiss must be denied.  Judge Watanabe correctly summarized the law governing substantive and procedural due process rights of pretrial detainees and convicted felons.  [#123 at 24-25.]  "Due process requires that a pretrial detainee not be punished prior to a lawful conviction."  *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Nevertheless, "the government may subject those awaiting trial to the conditions and restrictions of incarceration *so long as those conditions and restrictions do not amount to punishment*."  *Id.* at 1106 (citing *Bell*, 441 U.S. 536-37) (emphasis added).  Determining "whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose."  *Id.*

Unlike Judge Watanabe, I find that Mr. Hicks has pled sufficient facts to state a plausible claim for relief.  While his claims might not survive a post-discovery motion for summary judgment, assuming the truth of his alleged facts, he has stated a plausible claim against defendants.

Purpose is the key to determining whether the conditions of pretrial detention are legitimate.  Mr. Hicks alleges facts suggesting that his pretrial detention in the SHU was intended as punishment.  Specifically, he claims that Ms. Podolak ordered him confined in the

13

SHU because of his refusal to cooperate with law enforcement [#85 ¶ 35], that former Warden Davis told him that he was placed in the SHU "at the direction o[f] the AUSA," [#85 ¶ 58], that defendants Brown, Snider, and Kuta failed to provide him with information and hearings required by law [#85 at ¶¶ 46-48], and that defendants Brown and Snider used threats and intimidation to try to force Mr. Hicks to cooperate in the investigation [#85 ¶ 40].[4]

Judge Watanabe apparently did not assume the truth of these alleged facts. Instead, Judge Watanabe points to the official rationale for Mr. Hicks's placement in the SHU. In a nutshell, prison administrators claim that Mr. Hicks was placed in the SHU in order to protect institutional security in light of the media attention Mr. Hicks received after the Williams murder. Judge Watanabe gives this explanation credence and concludes that it is a valid, non-punitive reason to place a detainee in administrative segregation. [#123 at 25-26.] He is probably right. However at the motion to dismiss stage it is improper to weigh the statements of prison officials against the facts alleged by Mr. Hicks. If Mr. Hicks is allowed to prove the facts he has alleged—specifically that he was told by prison officials that he was placed in the SHU because of his refusal to cooperate in the Williams investigation—then the purpose of his confinement would be punishment, and he would be entitled to relief.

Lack of Personal Participation

I have read the cases that the defendants cite in support of their argument that Mr. Hicks has failed to allege personal participation sufficient to attach liability under *Bivens*. I am not convinced that they are applicable. For example, *Siegert v. Gilley*, 500 U.S. 226 (1991) appears to turn not on proof of personal participation but on the requirement that a plaintiff allege the violation of a clearly established right in order to overcome a qualified immunity defense.

---

[4] To be sure, not all of these alleged facts are contained in Claim Two, the only claim remaining in Mr. Hicks's complaint after the application of the statute of limitations and mootness doctrines. Nonetheless, because I liberally construe his *pro se* filings, I consider them incorporated into Claim Two.

Similarly, *Rizzo v. Goode*, 423 U.S. 362 (1976) involved a request for broad equitable relief and supervision of the Philadelphia Police Department. The Court found that such relief was unjustified because there was no "affirmative link" between specific acts of misconduct by individual police officers and a plan or policy of the department. *Rizzo*, 423 U.S. at 371. Finally, *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty.*, 996 F.2d 1035 (10th Cir. 1993) also turned on the failure of the plaintiff to prove a connection between a specific instance of misconduct by a teacher and a policy or practice of the defendant school district.[5] These cases do not suggest that a well-pled *Bivens* action against specifically identified prison officials and law enforcement officers must plead exhaustive facts alleging personal participation to survive a motion to dismiss under Rule 12(b)(6). Rather Mr. Hicks's allegations that the defendants had authority over his placement in the SHU and acted as a team are sufficient at this early stage. If he is unable to prove that they acted as a team and possessed such authority after discovery, then his claims will likely not survive a motion for summary judgment.

Unavailability of *Bivens* Remedy for First Amendment Violations

Defendants argue that there is no *Bivens* remedy available for violations of the First Amendment. [#99 at 16-20.] Because I have already dismissed the claims Mr. Hicks brings in Claim Three under the First Amendment, I do not address this issue.

Qualified Immunity

Defendants also claim protection from suit under qualified immunity. The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or

---

[5] Moreover none of these cases were disposed of by motions to dismiss. *Seigert* was an appeal from a denial of summary judgment, *Rizzo* was an appeal from judgment on the merits, and *Gates* was also at the summary judgment stage. Because these cases were disposed of after discovery, I believe they are even less helpful on the question of what level of pleading is required to demonstrate personal participation.

constitutional rights of which a reasonable person would have known." *Toevs v. Reid,* 685 F.3d 903, 909 (10th Cir. 2012) (internal citations omitted). Qualified immunity can be asserted at both the dismissal stage and the summary judgment stage of litigation. *Behrens v. Pelletier,* 516 U.S. 299, 307 (1996). "In reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004) (quoting *Currier v. Doran,* 242 F.3d 905, 917 (10th Cir. 2001).

"Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." *Currier,* 242 F.3d at 917. Second, "the plaintiff must demonstrate to the court that the law on which the plaintiff relies was clearly established at the time of the defendants' actions. The plaintiff must prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Id.* at 923. (internal citations omitted). In analyzing whether the right was established the test is whether it would have been "clear to a reasonable [person] that his conduct was unlawful under the circumstances presented." *Herrera v. City of Albuquerque*, 589 F. 3d 1064, 1070 (10th Cir. 2009).

Here, Mr. Hicks alleges that he was placed in the SHU in order to punish him for not cooperating with the Williams investigation. He also alleges that defendants Brown and Snider threatened to "gas" him out of his cell if he did not agree to talk to detectives. Assuming such punitive actions took place, they would have violated the prohibition against punishment of pretrial detainees. *See Peoples*, 422 F.3d at 1106 (citing *Bell*, 441 U.S. at 535). Mr. Hicks has pled sufficient facts to show that Ms. Podolak and the BOP defendants, by placing him in the

SHU with the purpose of punishing him for his failure to cooperate, have potentially violated his due process right not to be placed in detention conditions that lack a legitimate penological purpose.

Moreover, under the second prong of qualified immunity analysis, this right is clearly established by precedent from the Tenth Circuit and U.S. Supreme Court. None of the cases cited by defendants cast any doubt on the applicability of *Peoples* and *Bell* to this case. On the contrary, defendants' argument seems to misinterpret Mr. Hicks's claim. Defendants argue that "the cases show that [Mr. Hicks] has no due process right to avoid placement" in the SHU. [#99 at 23.] That is not Mr. Hicks's argument. Rather he alleges that it was unconstitutional to place him in the SHU for punitive purposes. Defendants' reliance on *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012) is misplaced. That case concerned whether the conditions in the Administrative Maximum Penitentiary ("ADX") were so atypically extreme as to give rise to a protected liberty interest. That the Tenth Circuit found no protected liberty interest in avoiding transfer to the ADX has no bearing on this case. Indeed, *Rezaq* does not obscure the established holdings in *Peoples* and *Bell*. No reasonable officer could suggest with a straight face that it is lawful to punish a pretrial detainee by placing him or her in administrative segregation. Therefore qualified immunity does not bar Mr. Hicks's remaining claims.

<u>Absolute Immunity</u>

A portion of Claim One alleges that defendant Chavez provided false testimony in an affidavit filed in Mr. Hicks's criminal case. [#85 ¶ 41.] Mr. Chavez claims the defense of absolute immunity. Because I have already found that Claim One is barred by the statute of limitations, I do not express an opinion on the merits of this defense.

**Order**

For the reasons set forth above,

1. The Court approves in part and accepts in part the recommendation of the magistrate judge that the motions to dismiss be granted [#123].

2. Plaintiff's objection to the magistrate judge's recommendation [#127] is GRANTED IN PART and DENIED IN PART.

3. Defendants' protective objection to the magistrate judge's recommendation [#124] is DENIED.

4. Defendant Podolak's motion to dismiss [#98] is GRANTED IN PART and DENIED IN PART. It is granted as to claims 1, 3, and 4 and denied as to claim 2.

5. Defendants Garcia, Kuta, Dosanj, Brown, Snider, and Chavez's motion to dismiss [#99] is GRANTED IN PART and DENIED IN PART. It is granted as to claims 1, 3, and 4 and denied as to claim 2.

DATED this 30th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge