IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00334-RBJ-KMT

BRIAN HICKS,

       Plaintiff,

v.

STEPHANIE PODOLAK,
BLAKE DAVIS,
RENE GARCIA,
SHON KUTA,
SHIKAH DOSANJ,
STEVE BROWN,
SEAN SNIDER,
JOHNNY CHAVEZ, and
UNITED STATES OF AMERICA,

       Defendants.

---

## ORDER

---

      This matter is before the Court on two Motions to Reconsider a previous Order granting in part and denying in part Defendants' Motions to Dismiss [ECF No. 133]. Defendant Podolak filed a Motion to Reconsider Order on Motion to Dismiss pursuant to Fed. R. Civ. P. 59(e) [ECF No. 144]. The Plaintiff, Mr. Hicks, filed a Motion to Reconsider Order on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 60(b) [ECF No. 160]. The previous Order is incorporated herein by reference.

      In preparing this Order, the Court reviewed its previous Order [ECF No. 133], the Recommendation of Magistrate Judge Michael J. Watanabe [ECF No. 123], the original dismissal briefs [ECF Nos. 98, 99, 114, 115, 121, 122], and the two motions for reconsideration

[ECF Nos. 144, 160].  The Court also reviewed all other outstanding motions [ECF Nos. 171, 190, 191, 192, 194].  After conducting this review and its own research, the Court agrees that mistakes were made in the previous Order.  The Court will use this opportunity to correct those mistakes and to dispose of all others matters pending before it.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 59(e), a party may file a motion to alter or amend a judgment no later than 28 days after the entry of judgment.  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion to reconsider is "appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* However, it is not to be used "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

If a motion to alter or amend a judgment is not filed within 28 days, a party may file a motion seeking relief from a final judgment, order, or proceeding under Fed. R. Civ. P. 60(b). "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F.2d 1437, 1440 (10th Cir. 1990).  "A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds for relief from judgment." *Van Skiver v. United States*, 952 F.2d 1241, 1243–44 (10th Cir. 1991).   These six grounds are as follows:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Because Defendant Podolak filed her Motion for Reconsideration within 28 days after entry of judgment, her motion would typically be considered under the Fed. R. Civ. P. 59(e) standard of review.  Mr. Hicks filed his Motion for Reconsideration three months after entry of judgment, and it would therefore have been considered under the Fed. R. Civ. P. 60(b) standard of review.  The Court has reconsidered its previous order, as both motions requested.  However, the Court does not necessarily agree entirely with the reasoning or the remedy that the parties are seeking and instead reconsiders and revises its earlier ruling as necessary to correct certain clear errors of law that were made.

## ANALYSIS

### I. STATUTE OF LIMITATIONS

The major issue discussed in both motions for reconsideration is whether the Court misapplied the statute of limitations.  In its previous Order, the Court found that the statute of limitations barred all but two of Mr. Hicks' claims, leaving his substantive and procedural due process claims intact for any time he spent in the Special Housing Unit ("SHU") after February 6, 2010.  Defendant Podolak argues that these claims as against her should have been dismissed as time barred.  I agree as to the substantive due process claims.  Mr. Hicks argues that the Court's decision to preserve his due process claims was correct and should have been extended to his claims of civil conspiracy and equal protection.  I disagree and reaffirm the decision to

dismiss his civil conspiracy and equal protection claims.  The remaining procedural due process claim will be discussed further below.

Continuing Violation Doctrine

By way of review, the Court in its previous order concluded that plaintiff's *Bivens* claims were governed by Colorado's two-year statute of limitations for personal injury actions.  The statute began to run when Mr. Hicks knew or had reason to know of the existence and cause of the injury which is the basis of the action.  Because he dated his complaint February 6, 2012, claims that accrued under that test on or before February 6, 2010 would presumably be barred. Mr. Hicks was placed in the Special Housing Unit or "SHU" on July 27, 2008; July 1, 2009; and October 2, 2009.  Mr. Hicks obviously was aware of his placements in the SHU when they occurred.  Therefore, it would seem that his claims would be barred by the statute of limitations.

Mr. Hicks' counterargument was that his claims were saved either by equitable tolling or the continuing violation doctrine.  The Court rejected the equitable tolling argument, and I have no reason to revisit that decision here.  The Court also rejected the continuing violation theory. It concluded that this meant that the claims barred by the statute of limitations were claims related to his July 27, 2008 and October 2, 2009 placements in the SHU, and claims against defendant Kuta concerning Mr. Kuta's alleged refusal to respond to Mr. Hicks' administrative appeals regarding threats made against him in 2008.  [ECF No. 133 at 11].  However, the Court declined to dismiss Mr. Hicks' substantive due process claim.  Therein lies what I now conclude to have been error.  The statute of limitations defense should have been sustained as to the substantive due process claim.

Mr. Hicks argues that under the continuing violation doctrine his claims are not time barred.  In particular, he argues that his continued placement in the SHU after February 6, 2010

preserves his substantive due process and equal protection claims, and that any agreements to keep him in the SHU after February 6, 2010 are actionable under a civil conspiracy theory.

The continuing violation doctrine is an equitable principle originally and typically applied in the context of Title VII claims to link multiple wrongful acts as a single discriminatory enterprise. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). The doctrine permits a plaintiff to challenge incidents that occurred outside of the limitations period—if such incidents are sufficiently related—in order to show a continuing pattern of discrimination. *See Hunt*, 17 F.3d at 1266; *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1269 n.2 (10th Cir. 2000). However, the plaintiff's claims cannot stand if he is "merely complaining of the continuing effects of a discriminatory practice that existed only before the relevant filing period." *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987). "There must be at least one instance of the discriminatory practice within the filing period for the continuing violation theory to apply." *Id.*

In sum, "[t]he continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005) (unpublished). The doctrine "is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *4 (10th Cir. Jan. 10, 2007) (citing *Bergman v. United States*, 751 F.2d 314, 317 (10th Cir. 1984)).

To date, the Tenth Circuit has never extended the continuing violation doctrine to a *Bivens* or § 1983 claim. *See e.g.*, *Fogle v. Slack*, 419 F. App'x 860, 863 (10th Cir. 2011) (unpublished); *Burkley*, 141 F. App'x at 716 n.2; *Hunt*, 17 F.3d at 1266; *Pinson v. Pacheco*, No.

10-CV-01377-REB-MJW, 2011 WL 2579753 (D. Colo. May 9, 2011).  However, even assuming it did extend, it would not apply to the claims asserted in Mr. Hicks' Second Amended Complaint as against Ms. Podolak [ECF No. 85].  Nor am I now persuaded that it would apply to the claims against the Bureau of Prison ("BOP") defendants.

The Court presumed, without stating, that Mr. Hicks could bring claims for ongoing violations of his rights so long as the claims were not actionable as to acts that took place outside of the limitations period.  The Court misconstrued the continuing violation doctrine as a theory by which an individual preserves otherwise stale claims, similar to tolling.  This error explains how the Court correctly found that the doctrine did not apply, but then mistakenly found that certain of Mr. Hicks' claims were not time barred.  But the continuing violation theory, correctly understood and applied, allows a court the opportunity to look backwards at patterns or practices that are outside the statute of limitations when at least one injurious act has occurred within the filing period.  It does not in fact revive the stale claims.

Podolak.  As for Ms. Podolak, the plaintiff has alleged that she directed the authorities at the Federal Detention Center to place Mr. Hicks in the SHU, essentially as punishment for his unwillingness to cooperate with Denver homicide detectives in the Darrent Williams murder investigation.  But even assuming the truth of the allegation for present purposes, Mr. Hicks has not alleged that Ms. Podolak gave such directions after February 6, 2010.  By his own allegations, Mr. Hicks was aware before that date that he was being held in the SHU at the request of or by instruction from an outside agency, i.e., Ms. Podolak.  The fact that her request simply remained in place after February 6, 2010 does not establish that an injurious act occurred within the period of limitations, which would have saved the claim from being time barred.  The

Court should have applied this reasoning to the substantive due process claim asserted against her, which is hereby dismissed.

BOP Defendants.  While the prison defendants have not moved for reconsideration, the Court is bound to correct its error as it applies to them as well as to Ms. Podolak.  For the same reasons as those set forth above, I conclude that Mr. Hicks' substantive due process claim against the remaining defendants is time barred.

This claim is based on Mr. Hicks' right not to be punished as a pre-trial detainee.  Second Amended Complaint [ECF No. 85] at 18–19.  Once again, the continuing violation doctrine is triggered by continual unlawful *acts*, not by continual ill effects from the original violation. Because the only allegedly unlawful acts occurred in 2008 and 2009 when Mr. Hicks was placed in the SHU, Mr. Hicks' substantive due process claim is not subject to the continuing violation theory.  Further, the decision to keep Mr. Hicks in the SHU was allegedly based on an ongoing order, meaning that his placement was not reviewed or redirected on a continual basis; if it had been, the redirected placement might have been considered a discrete act.  [*See* ECF No. 1 at 58 (Ex. G)] (noting that Mr. Hicks was "being held in SHU as a request from an outside agency. Whenever this request gets lifted we will decide if placing you in general population at the Federal Detention Center is warranted.").  The Court concludes that Mr. Hicks' substantive due process claim against the BOP defendants should have been dismissed as time barred and hereby reverses its previous decision on this matter.

Equal Protection.  In his motion for reconsideration, Mr. Hicks also asks the Court to reconsider its dismissal of his equal protection claim under the theory that his rights were violated each day he remained in the SHU.  "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley Const.,*

*Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991).  The government treated Mr. Hicks differently when they *placed* him in the SHU; those three instances triggered the equal protection clause.  Though Mr. Hicks continued to suffer the ill effects of those acts after February 6, 2010, no acts occurred within the filing period, and the continuing violation doctrine does not apply to continuing ill effects.  The Court therefore affirms its decision to dismiss the equal protection claim as barred by the applicable statute of limitations.

Civil Conspiracy.  Mr. Hicks also asks the Court to reconsider its dismissal of his civil conspiracy claims as time barred.  He argues that under the continuing violation doctrine, an allegation of civil conspiracy constitutes a viable claim even if the alleged conspiracy began at a point that would be barred by the statute of limitations so long as one act occurred within the statutory filing period.  It is unnecessary for the Court to determine whether the continuing violation doctrine should apply to this claim.  Instead, the Court finds that Mr. Hicks has not sufficiently pled a claim of civil conspiracy and it must therefore be dismissed under Fed. R. Civ. P. 12(b)(6).

"[A] conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" pursuant to § 1983 is actionable.[1]  *See Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  "A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means." *Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. 1984).  It requires a "meeting of the minds or

---

[1] While Mr. Hicks asserts his claims against federal officers under a *Bivens* theory,  § 1983 cases and *Bivens* cases generally map onto each other insofar as legal standards are concerned.  *See e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 82 (2001) ("It is true that we have never expressly held that the contours of *Bivens* and § 1983 are identical.  The Court, however, has recognized sound jurisprudential reasons for parallelism, as different standards for claims against state and federal actors 'would be incongruous and confusing.'")

agreement among the defendants and concerted action." *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001) (unpublished).  The question here is whether there was a meeting of the minds or an agreement between the defendants along with concerted action that resulted in depriving Mr. Hicks of his constitutional rights.

Mr. Hicks' Second Amended Complaint asserts that each of the defendants conspired to deprive him of his constitutional rights by placing him in the SHU at the direction of Defendant Podolak while knowing that he was not a threat to the safety and the security of the general population.  [ECF No. 85 at ¶¶ 34–41].  He also claims that some of these individuals were part of a team responsible for decisions regarding whether or not to place, hold, and/or release an inmate from the SHU.  *Id.*  However, Mr. Hicks maintains that these individuals continued to hold him in the SHU at the directive of Ms. Podolak.  He does not allege that the defendants came to an agreement or a meeting of the minds regarding this decision.  Instead, Mr. Hicks has consistently and continually argued that Ms. Podolak made this decision and subsequently directed prison administrators to enforce her order.  This type of allegation is not sufficient to state a claim of civil conspiracy.  There is no claim of concerted action or an agreement to commit an unlawful act.  Therefore, I affirm the dismissal of this claim as per the previous Order, but for the foregoing reasons.

## II. PROCEDURAL DUE PROCESS

Federal regulations require the Segregation Review Official ("SRO") to conduct hearings every 30 days to formally review the status of prisoners being held in administrative detention or disciplinary segregation, which the prisoner is permitted to attend.  28 C.F.R. § 541.26(c).[2]  Mr.

---

[2] In his Second Amended Complaint, Mr. Hicks cites 28 C.F.R. § 541.22(c) as the relevant regulation. [ECF No. 85 at 20].  However, the regulations were amended in 2010 such that the proper regulation is now codified at 28 C.F.R. § 541.26(c).  At the time Mr. Hicks was originally placed in administrative segregation, 28 C.F.R. § 541.22(c) read, in pertinent part: "*Review of inmates housed in administrative*

Hicks alleges that he never received these hearings or other reviews through the duration of his placement in the SHU.  Second Amended Complaint [ECF No. 85] at ¶ 49.  Because the right renewed every 30 days, each failure to provide a hearing constituted a discrete action that arguably harmed Mr. Hicks.  Though Mr. Hicks' claims arising on or before February 6, 2010 are time barred, claims associated with the lack of 30-day review hearings after February 6, 2010 are permitted to go forward.

Ms. Podolak.  Notably, Mr. Hicks only brings his procedural due process claim against Defendants Garcia, Chavez, and Dosanj.  *Id.*  In its previous Order, this Court found that Mr. Hicks' due process claims—without distinguishing between the substantive and procedural claims—could be brought against Ms. Podolak even though Mr. Hicks failed to name her as a defendant in Claim Two of his Second Amended Complaint.  [ECF No. 133 at 13–14].

The Court erred when it failed to distinguish between the substantive and procedural due process claims.  While Ms. Podolak may have been responsible for violating Mr. Hicks' substantive due process rights by ordering that he be placed in the SHU, Mr. Hicks has not pled facts supporting a claim that Ms. Podolak had any part in the alleged procedural due process violations.  Notably, Ms. Podolak was not in a position to administer the SRO review hearings,

---

*detention*. (1) Except as otherwise provided in paragraphs (c)(2) and (c)(3) of this section, the Segregation Review Official will review the status of inmates housed in administrative detention.  The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days.  The inmate appears before the SRO at the hearing unless the inmate waives the right to appear."  Sections (c)(2) and (c)(3) are not pertinent to this action.  The source of these provisions is 53 FR 197, Jan. 5, 1988.  By the time Mr. Hicks filed his action, the applicable provision was codified under 28 C.F.R. § 541.26(c), which reads, in pertinent part: "Review of placement in the SHU.  Your placement in the SHU will be reviewed by the Segregation Review Official (SRO) as follows: . . . (c) *Thirty day reviews*.  After every 30 calendar days of continuous placement in either administrative detention or disciplinary segregation status, the SRO will formally review your status at a hearing you can attend."  The source of these provisions is 75 FR 76267, Dec. 8, 2010.  The difference in these provisions may not be relevant to the outcome of this case.  However, the Court cites these provisions to clarify the pleadings.

and Mr. Hicks has not alleged that she prevented the hearings from being conducted.  While Ms. Podolak's alleged order to place Mr. Hicks' in the SHU indefinitely could have been the driving force behind BOP's failure to conduct the hearings, the individual tasked with ensuring these hearings took place was the SRO.  The responsibility for failing to administer the hearings therefore lies with BOP officials.  Mr. Hicks' procedural due process claim should have been dismissed as against Ms. Podolak.

At this time, all claims against Ms. Podolak are dismissed.  Her motion for reconsideration is granted, and Mr. Hicks' motion for reconsideration is denied.

BOP Defendants.  It may not be clear what claims remain in this action and against whom.  From the Court's perspective, the only remaining claim is Mr. Hicks' procedural due process claim against Defendants Garcia, Chavez, and Dosanj.  In their original motion to dismiss, the BOP defendants jointly argued that Mr. Hicks failed to properly plead a procedural due process violation because he did not have a liberty interest in remaining out of segregated confinement.  [*See* ECF No. 99 at 14–15].  This argument was not addressed in the Court's previous Order.  [*See generally* ECF No. 133].  While none of the BOP defendants have filed a motion for reconsideration, the Court feels that it is in the interests of efficiency for this issue to be clarified.

The Due Process Clause of the Fifth Amendment protects against governmental deprivations of life, liberty, or property without due process of law.  U.S. Const. amend. V.  To assert a due process violation, a plaintiff must show that he possessed a protected interest under the Due Process Clause and that he was not afforded an appropriate level of process before being deprived of that interest.  *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir.

1994).  The first question is whether Mr. Hicks sufficiently pled that he possessed a protected interest, in this case a liberty interest.  *See Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012).

Mr. Hicks presents a unique case.  From his initial incarceration in 2007 until his conviction on or around February 4, 2011, Mr. Hicks was a pre-trial detainee.  He therefore had a protected liberty interest in being free from conditions of punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").  Because the crux of Mr. Hicks' suit is that he was improperly subjected to the SHU as punishment, the Court finds that from February 6, 2010 until February 4, 2011, exclusive, Mr. Hicks had a liberty interest in remaining free from disciplinary segregation.

Our second inquiry is whether Mr. Hicks has sufficiently pled that he had a protected liberty interest in remaining free from disciplinary segregation after being convicted of a crime.  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' . . . or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  For convicted inmates, the Constitution does not "give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Id.* (citation omitted).  However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," subject to the limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995).  *Id.* at 222.

In *Sandin*, the Supreme Court considered whether a state regulation in and of itself could create a liberty interest in inmates to remain free from disciplinary segregation. The Court ruled that it could not, finding instead that a liberty interest only arose when an inmate suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. In making this ruling, the Court changed course from its previous decisions on similar questions, reasoning that "shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481. While such a conclusion "may be entirely sensible in the ordinary task of construing a statute defining rights and remedies available to the general public," it is "a good deal less sensible in the case of a prison regulation primarily designed to guide correctional officials in the administration of a prison." *Id.* at 481–82.

The *Sandin* case was brought by an inmate, Conner, who was sentenced to 30 days in disciplinary segregation for an infraction of a prison rule. Conner argued that the state regulations afforded him a liberty interest in avoiding disciplinary segregation such that he was entitled to due process before being placed in segregation. *Id.* at 475–76. As noted above, the Court rejected this argument, choosing instead to analyze whether the specific conditions Conner was subjected to presented an atypical and significant deprivation in relation to the ordinary incidents of prison life. *Id.* at 485–86. The Court found that they did not. It compared disciplinary segregation to the conditions of administrative segregation and protective custody, finding the conditions to be relatively the same;[3] noted that the 30-day duration of the

---

[3] The actual conditions were not discussed in the opinion. However, the regulation on which Conner based his action specifically set out guidelines for when a prisoner could be placed in disciplinary

confinement did not exceed typical discretionary confinement for a prisoner serving a term of 30 years to life; and considered that the confinement would not have an impact on the overall duration of Conner's sentence.  *Id.* at 486–87.

A decade after *Sandin*, the Supreme Court decided *Wilkinson v. Austin*, 545 U.S. 209 (2005).  The case considered whether inmates had a liberty interest in avoiding placement in Ohio's Supermax facility, Ohio State Penitentiary ("OSP").  Relying on *Sandin*, the Court considered the totality of the conditions at OSP in making its decision.

The *Wilkinson* Court found that the conditions at OSP were "more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units," which are a "highly restrictive form of solitary confinement."  *Id.* at 214.  In OSP, inmates must remain in their cells (7 feet by 14 feet) for 23 hours per day; during their one hour out of the cell, access is limited to one of two indoor recreation cells; a light in the cell remains on at all times, though it is sometimes dimmed, and any attempt to shield the light to sleep subjects an inmate to further punishment.  *Id.*  Incarceration at OSP is "synonymous with extreme isolation" in contrast to any other Ohio prison, including any segregation unit.  *Id.*  The Court found that OSP inmates were "deprived of almost any environmental or sensory stimuli and of almost all human contact."  *Id.*  In particular, the cells have solid metal doors with metal strips along the sides and bottoms to prevent conversation or communication with other inmates; all meals are taken alone in the cell; and opportunities for visitation are rare and, when they occur, are conducted through glass walls.  *Id.*  Finally, placement in OSP is for an indefinite

_____

segregation, not administrative segregation or protective custody.  *See id.* at 477 n.3.  In this case, the regulations provide for 30 day reviews of any segregated confinement, whether it be administrative detention or disciplinary segregation.  *See* 28 C.F.R. § 541.26(c).  Therefore, the comparison between conditions in administrative segregation and disciplinary segregation may be inapposite in this case.

period of time and inmates otherwise eligible for parole lose their eligibility when held there. *Id.* at 214–15.

Viewing the impact of these conditions in the aggregate, the *Wilkinson* Court held that assignment to the Supermax facility imposed an atypical and significant hardship in relation to the ordinary incidents of prison life, such that inmates had a protected liberty interest in not being placed there without due process. *Id.* at 223. The Court distinguished *Sandin* on at least two grounds: duration and disqualification from parole eligibility. *Id.* at 223–24. As to duration, the Court found that "[u]nlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually." *Id.* at 224.

Notably, the *Wilkinson* Court did not attempt to clarify what "in relation to the ordinary incidents of prison life" meant. Instead, it acknowledged that the "Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." *Id.* at 223 (collecting cases). It chose not to resolve the issue because it was satisfied that confinement in OSP imposed "an atypical and significant hardship under any plausible baseline." *Id.*

Two years later, the Tenth Circuit attempted to delineate the baseline comparison analysis in *Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons*, 473 F.3d 1134 (10th Cir. 2007). The court noted that the question lends itself to several possible solutions, including comparing administrative segregation with conditions in the general public, comparing it to conditions in other typical protective custodies, or comparing it to the experiences of other uniquely placed or difficult to place prisoners. *Id.* at 1341–42. In rejecting such a rigid formulation of the rule, the court decided that the analysis should include looking at a few key factors, none of which are dispositive. *Id.* at 1342.

> Relevant factors might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson;* and (4) the placement is indeterminate (in *Wilkinson* the placement was reviewed only annually).

*Id.* Notably, this list is non-exhaustive, suggesting that future courts may look at other factors depending on the context of the case.

In *DiMarco*, the inmate was a hermaphrodite who presented as a female and, when arrested, was sent to a female prison. *Id.* at 1337. When the guards realized that she was a hermaphrodite they placed her in segregation for the duration of her 14-month sentence, giving three rationales: (1) her safety and the safety of the general population; (2) her physical condition; and (3) the need to tailor programs for her condition. *Id.* Prison officials reviewed her status every 90 days until her release, but *DiMarco* contended that she had a due process right to contest her segregated placement and living conditions in an administrative hearing, which was never provided. *Id.* at 1336. The court found that Ms. DiMarco did not have a liberty interest in being free from segregation. It based its decision on the following reasons: (1) the segregation was for safety purposes, a legitimate penological interest; (2) sending DiMarco to a men's prison was not a viable alternative; (3) the conditions of her confinement were spartan but not atypical of protective custody; (4) she was allowed out of her cell 5.5 hours per day; (5) she had access to the library, recreational, and religious facilities; (6) she had access to various prison programs; (7) assignment to segregation did not lengthen her period of confinement; and (8) her segregation was reviewed every 90 days, and she was present at the meetings and allowed to present her views. *Id.* at 1342–44.

From the cases the Court has read, it appears that "determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of

nonexclusive factors, viewed in their totality." *Thompson v. Winn*, No. 07-CV-00025-MSK-KLM, 2008 WL 901570, at *6 (D. Colo. Mar. 31, 2008). Before the *DiMarco* decision came out, the Tenth Circuit wrote several unpublished opinions applying *Sandin* and *Wilkinson* to inmate complaints of due process violations. Without discussing them in full detail, a short summary of their relevant factors will be helpful in guiding this Court's decision as to whether Mr. Hicks sufficiently pled that he had a liberty interest in not being placed in the SHU.

In *Hill v. Fleming*, 173 F. App'x 664 (10th Cir. 2006) (unpublished), inmate Hill was confined in administrative detention for 399 days. *Id.* at 666. Factual disputes arose over the conditions of his confinement, but according to his sworn affidavit he was subject to the following conditions: (1) he was confined to his cell 24-hours per day except for one hour of exercise each day, five days a week; and (2) officials denied him (a) sick calls; (b) educational, work, and visitation privileges; and (c) use of the telephone, commissary, libraries (including the law library), and recreation area available to inmates in the general population. *Id.* As part of his claim, Hill argued that he was denied periodic review hearings required under federal regulations, *id.*, the same argument advanced by Mr. Hicks. At the summary judgment stage, the district court found that Hill had raised facts in his verified complaint sufficient to establish a dispute over whether officials created a liberty interest triggering Fifth Amendment procedural due process rights. *Id.* The Tenth Circuit affirmed the district court's decision, finding that a resolution of the issue on summary judgment would have been inappropriate.[4] *Id.* at 668.

In *Jordan v. Federal Bureau of Prisons*, 191 F. App'x 639 (10th Cir. 2006) (unpublished), the Tenth Circuit found that no liberty interest existed for an inmate placed in segregation where the differences between conditions in segregation and in general population amounted to one extra social phone call per month and up to seven extra hours of recreation time

---

[4] The case was decided on qualified immunity grounds. *Id.* at 675.

per week for general population inmates. *Id.* at 652. Notably, the plaintiff enjoyed access to educational and recreational programs, medical and psychological services, leisure and legal library services, and frequent interactions with staff. *Id.* at 644. The only strong factor in the plaintiff's favor was the duration of his segregated confinement: five years. However, the court found that the length of confinement did not, on its own, give rise to an atypical or significant hardship. Because the plaintiff was being held pending an investigation of a murder charge against him, as he had allegedly killed another inmate while in the main recreation yard, his confinement was not indefinite but instead tied to the length of the murder investigation. *Id.* at 652. Further, the court considered that the plaintiff's sentence was unaffected by the confinement and that the plaintiff continued to commit disciplinary infractions, which further contributed to the conditions of his confinement. *Id.* at 653. Unlike *Hill*, the Tenth Circuit found that the question of whether a liberty interest existed was appropriate for resolution on summary judgment.

The Court now turns to whether Mr. Hicks has sufficiently pled that he had a liberty interest in remaining free from disciplinary segregation after being convicted of a crime. Mr. Hicks has pled that the "highly restrictive conditions of confinement" in the SHU were "atypical and significant" in comparison to other pretrial detainees housed in the same prison.[5] Second Amended Complaint [ECF No. 85] at ¶ 43. Just as in *Hill*, Mr. Hicks contends that he was housed in a solitary confinement cell for 23 hours per day Monday through Friday, with one hour for recreation, and 24 hours per day on Saturday and Sunday. *Id.* Mr. Hicks had limited shower access and was not provided with commissary or other recreation activities as other general

---

[5] The Court liberally construes Mr. Hicks' pleadings as comparing his conditions of confinement to not only pretrial detainees but to any general population inmate, as Mr. Hicks' complaint focuses on the differences between being housed in segregation versus in general population.

population inmates were.[6]  *Id.*  Every time he left his cell he was handcuffed behind his back,

pat-searched, scanned with a metal detector, and escorted by two officers.  *Id.*  Finally, Mr. Hicks

asserts that he is a type 2 diabetic with hypertension and that his health has deteriorated as a

result of his conditions of confinement.[7]  *Id.*  At the time of filing his Second Amended

Complaint, Mr. Hicks alleged that he had been confined in the SHU for 1,160 days.[8]  *Id.* at ¶ 44.

Overall, the Court finds that this set of facts aligns more closely to *Hill* than to *Jordan*.

This case is also not similar to the situation in *DiMarco*.  Here, there is a genuine dispute over

whether Mr. Hicks' confinement was for safety purposes.  In addition, Mr. Hicks' confinement

was never reviewed, and Ms. DiMarco's conditions of confinement were not as extreme or harsh

as the conditions Mr. Hicks' claims he faced.  Finally, the Court finds that the duration of

confinement (without review), taken in conjunction with the other relevant factors, leans in favor

of Mr. Hicks.  Whereas in *Jordan* the lengthy confinement was necessary to conduct an

investigation into a murder that occurred in the prison, in this case Mr. Hicks was confined under

the pretext of ongoing safety concerns.  If that were true, periodic review would presumably be

the best way to determine whether the safety issues persisted over time.  The lack of review

combined with the length of duration therefore weighs in Mr. Hicks' favor.

The facts in this case are very similar to those in *Thompson v. Winn*, No. 07-CV-00025-

MSK-KLM, 2008 WL 901570 (D. Colo. Mar. 31, 2008).  In *Thompson*, an inmate was held in

administrative detention for approximately 500 days under the pretext that the segregation was

---

[6] Mr. Hicks also complains that he was allowed to make only one personal phone call per week, however he has not pled how many phone calls other inmates were allowed to make.  *See id.*

[7] Though Mr. Hicks did not plead how the conditions caused his health to deteriorate, he stated that his health concerns include dramatic weight loss (approximately 20 pounds), severe stress and anxiety, and difficulty controlling his blood sugar and blood pressure levels.  *Id.*

[8] The Second Amended Complaint is not dated, but it was received by the Court on October 30, 2012, still several weeks shy of Mr. Hicks' final release from the SHU on or around November 20, 2012.

for his own safety.  *Id.* at *1.  The inmate alleged that he suffered the following conditions of confinement: (1) he was confined to his cell 23 hours per day; (2) he was placed in handcuffs any time he left his cell; (3) he was given restricted access to the telephone, showers, recreation, the law library, and educational and rehabilitative programs; (4) he was allowed only non-contact visits with family; and (5) he was provided limited access to medical and dental care, though he did not plead what those limitations specifically were.  *Id.* at *2.  Based on these facts, the court found that "[t]he alleged deprivations appear to fall somewhere between those in *Hill*, where there was arguably a liberty interest, and *Jordan*, where there was not."  *Id.* at *6.  Taking into consideration that the plaintiff was representing himself and that the court was only tasked with evaluating the sufficiency of his pleadings at the dismissal stage, the court was "not prepared to say that the Plaintiff [could not] prove facts to demonstrate a protected liberty interest."  *Id.*

Looking to the relevant factors in the Tenth Circuit and Supreme Court cases cited above, as well as to *Thompson* as persuasive guidance, the Court finds that Mr. Hicks has sufficiently pled facts demonstrating that he may have had a protected liberty interest in remaining out of the SHU.  In turn, that interest would have afforded him the right to due process, including meaningful review of his continued placement in the SHU.

## III. OTHER PENDING MOTIONS

Based on the foregoing decision, the Court makes the following rulings on the other motions pending before it:

ECF No. 192

The Court denies Plaintiff's Motion for Order Governing Procedures for Depositions [ECF No. 192] with leave to refile.  Upon refiling, the plaintiff must identify who if anyone he

would still like to depose and how their deposition would relate to the one remaining claim.  The Court also requires that depositions be taken with a court reporter present.

ECF No. 190

The Court denies Plaintiff's Motion to Reschedule Trial Date [ECF No. 190] with leave to refile.  The Court instructs the plaintiff to wait to refile this motion until he informs the Court as to his deposition requests.  The plaintiff may consolidate these two motions.  The Court would also welcome a joint motion for an amended scheduling order, though the motion will be considered in light of whether additional discovery is needed.

ECF Nos. 171, 191

The Court denies Defendants Brown's and Snider's Motion for Summary Judgment Based on Statute of Limitations [ECF No. 171] as moot and likewise denies Plaintiff's Motion to Allow Out of Time Response to Defendants' Motion for Summary Judgment [ECF No. 191] as moot.

ECF No. 194

The Court denies Defendants' Motion for Summary Judgment Based on Exhaustion [ECF No. 194] with leave to refile.  Now that there is only one claim remaining as against only three defendants, the Court asks those defendants to consider what issues remain and to file one motion that contains all of their claims in support of summary judgment.  The Court will no longer accept ad seriatim motions, each concerning a limited number of issues, as it had in the past when the case was more complicated.

ECF No. 198

The discovery stay the Court previously granted [ECF No. 198] is hereby lifted.

**CONCLUSION**

The only cause of action remaining in this case is Mr. Hicks' procedural due process claim relating to his failure to receive meaningful review of his continued placement in the SHU after February 6, 2010 as against Defendants Garcia, Chavez, and Dosanj.

Given the stage of this litigation, the Court once again directs the parties that any future dispositive motions should discuss all of the parties' arguments for the resolution sought, including arguments in the alternative.  The Court is particularly interested in arguments concerning whether Mr. Hicks had a protected liberty interest once he became a post-conviction detainee, as well as a discussion concerning what process is due for inmates with a protected liberty interest who are placed in segregation.  It expects the parties to conduct a *Mathews* Balancing Test[9] and suggests that the parties consult the application of the test in *Wilkinson v. Austin*, 545 U.S. 209 (2005), among other cases, for guidance.

Mr. Hicks' Second Amended Complaint sought a variety of relief, including injunctive relief, compensatory damages, and punitive damages.  [ECF No. 85 at Part G].  Because he was released from the SHU and has since been transferred to a different facility out of state, Mr. Hicks' request for injunctive relief is moot.  The Court suggests that the parties brief the question of whether damages are available in this action under the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.[10]

The Court's requests are not exhaustive of the issues that should be briefed in a future dispositive motion.  These topic areas are only singled out for briefing because they have not yet been discussed, and the Court believes that the outcome of these questions may be necessary for proper resolution of this case.  To be clear, the Court is not requiring that the parties file any

---

[9] *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

[10] The requirement can be found at 42 U.S.C. § 1997e(e).

further motions but asks the parties to take into consideration these requests should they chose to do so.

**ORDER**

For the reasons set forth above,

1. The Court GRANTS Defendant Podolak's Motion to Reconsider Order on Motion to Dismiss [ECF No. 144].  All remaining claims against Ms. Podolak are dismissed with prejudice.

2. The Court DENIES Plaintiff Hicks' Motion to Reconsider Order on Defendants' Motion to Dismiss [ECF No. 160].

3.  The Court *sua sponte* dismisses the substantive due process claims against the BOP defendants—all remaining defendants—with prejudice.

4. The Court DENIES Plaintiff's Motion for Order Governing Procedures for Depositions [ECF No. 192] with leave to refile in accordance with the conditions discussed above.

5. The Court DENIES Plaintiff's Motion to Reschedule Trial Date [ECF No. 190] with leave to refile in accordance with the conditions discussed above.

6. The Court DENIES Defendants Brown's and Snider's Motion for Summary Judgment Based on Statute of Limitations [ECF No. 171] as moot.

7. The Court DENIES Plaintiff's Motion to Allow Out of Time Response to Defendants' Motion for Summary Judgment [ECF No. 191] as moot.

8. The Court DENIES Defendants' Motion for Summary Judgment Based on Exhaustion [ECF No. 194] with leave to refile in accordance with the conditions discussed above.

9. The discovery stay the Court previously granted [ECF No. 198] is hereby lifted.

DATED this 29th day of April, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge